IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD S. TOWELL, JR.,                                    3:11-CV-01260 RE

    Plaintiff,                              **OPINION AND ORDER**

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.


**REDDEN**, Judge:

 Plaintiff Richard Towell ("Towell") brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his claim for Disability Insurance Benefits and Supplemental Security Income benefits.  For the

reasons set forth below, the decision of the Commissioner is affirmed.

///


1  - OPINION AND ORDER

## BACKGROUND

Born in 1975, Towell completed high school and approximately one year of community college. He has worked in pizza delivery, as a cashier, ranch hand, dough mixer, sales person, and laborer. In May 2010, Towell filed an application for social security income and disability insurance benefits, alleging disability since September 8, 2008. Tr. 174, 178. His applications were denied initially and upon reconsideration. After a May 2011 hearing, an Administrative Law Judge ("ALJ") found him not disabled. Towell's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Towell had the medically determinable severe impairment of obsessive compulsive disorder ("OCD"). Tr. 12.

The ALJ found that Towell's impairments did not meet or equal the requirements of a listed impairment.

The ALJ determined that Towell retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: "due to psychological symptoms related to his severe mental impairment, he is limited to unskilled work (as determined by the Dictionary of Occupational Titles) that involves no public contact and only occasional interaction with co-workers." Tr. 15. The ALJ found that Towell was not capable of performing his past relevant work. Tr. 17.

The ALJ found that Towell was not disabled and retained the ability to work as a hand packager, general cleaning worker, and bench worker. Tr. 18.

The medical records accurately set out Towell's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Towell contends that the ALJ erred by: (1) failing to find additional severe impairments at step two; (2) improperly weighing medical evidence; (3) improperly weighing lay witness testimony; and (5) failing to include all functional limitations in the RFC.

## I. Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR §§ 404.1521(b); 416.920(c).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by

medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

The ALJ properly determined that Towell had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless. *Lewis v. Apfel,* 236 F.3d 505, 511 (9th Cir. 2001).

## II. The Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Back Pain and Shingles

Towell points to a November 2008 orthopedic examination by Dr. Gilsdorf in which he complained of a nine to ten year history of upper back pain. Tr. 320. On examination, Dr. Gilsdorf observed normal musculature, full range of shoulder motion with no discomfort, and normal sensation and reflexes. *Id.* Dr. Gilsdorf concluded that Towell has a "normal dorsal spine," continued the current medications, and noted that "no additional meds or treatments indicated for dorsal complaints." *Id.* This is consistent with the September 2008 examination

by non-physician examiner Lisa Turner, who found "normal range of motion in all major muscle groups; no limb or joint pain with range of motion; muscle strength: 5/5 in all major muscle groups." Tr. 323-24.

Towell cites the June 2010 examination by Raymond P. Nolan, M.D., Ph.D. Tr. 338-40. Dr. Nolan noted Towell's complaints of post herpetic neuralgia, and description of "hyperesthesias [sensitivity to touch] that extended around the left and right thoracic cavity to the anterior chest region." Tr. 338. Towell reported constant pain at a level of seven or eight on a scale of zero to ten, and that he was told the diagnosis was post herpetic neuralgia. *Id.* Dr. Nolan wrote "Not likely. The story and distribution of complaints are obviously not compatible with that diagnosis." *Id.* Towell was not on any medication, but did smoke or eat marijuana daily and had a medical marijuana card. Dr. Nolan concluded that it was "incredibly difficult to accept postherpetic neuralgia as explanation of his underlying complaint," [t]hus, I think we are left with a diagnosis of thoracic hyperesthesias, etiology undetermined. And I would not be adverse to consideration of a functional explanation integrated into his psychiatric diagnosis of obsessive-compulsive disorder." Tr. 340. Dr. Nolan noted that Towell should minimize squatting and kneeling activities, based on Towell's report of knee pain. *Id.* Dr. Nolan did not find any abnormality on examination of the knees. Tr. 339.

Sunita Paudyal, M.D., examined Towell in January 2011. Tr. 351-52. He reported severe back pain and a history of shingles. Dr. Paudyal noted normal muscular strength in all four extremities and normal gait, and wrote "Back pain: I am not sure about post herpetic neuralgia-the rash might have been b/l. Has x rays. I need records." Tr. 352. In February 2011, Dr. Paudyal advised Towell that his symptoms were not consistent with shingles, and ordered x rays

of his back.  She noted that Towell requested an MRI, but that it was "not indicated at present."

Tr. 376.  In March 2011, Dr. Paudyal advised Towell that his x rays did not suggest any etiology

of back pain, that he had no degenerative disc disease, that his symptoms were not consistent

with neuralgia, and that his pain may be the result of a "central sensitivity syndrome."  Tr. 374.

She advised him to address his OCD and psychological issues first.  *Id.*

    The ALJ noted these reports, as well as the regulation requiring a physical impairment be

"established by medical evidence consisting of signs, symptoms, and laboratory findings," and

not solely by the claimant's reported symptoms.  Tr. 13.  §§ 20 C.F.R. 404.1508 and 416.908.

The ALJ concluded that Towell's back pain and/or hyperesthesia were not severe impairments.

This finding is supported by substantial evidence.

### B.  Gregory A. Cole, Ph.D.

    Dr. Cole conducted a psychodiagnostic evaluation in May 2010.  Tr. 332-37.  He

reviewed a limited number of records, conducted a clinical interview, and administered a number

of tests.  Dr. Cole diagnosed Depressive Disorder, NOS; Obsessive-Compulsive Disorder; Rule-

out Attention Deficit Hyperactivity Disorder, Combined Type; Rule-out Bipolar Disorder, NOS;

and assessed a GAF of 58.  Dr. Cole stated:

> Results of this evaluation indicated that the client exhibited some
> problems in the areas of attention and concentration.  He also was
> noted to have slightly below average immediate memory capability,
> and below average delayed memory capability.  The client was able
> to sustain simple routine tasks, and no problems completing a simple
> multiple step task were observed...if the client pursues a vocational
> placement in the near future, then it is presumed that his: [sic] diffi-
> culties staying focused on tasks, problems interacting with others,
> and claimed pain problems, would be the primary facts, which would
> impact his overall level of vocational success.

Tr. 337.

The ALJ gave Dr. Cole's opinion "significant weight." Tr. 16.

Towell argues that the ALJ erred by not incorporating into his RFC Dr. Cole's statement that he had "difficulties staying focused on tasks... and claimed pain problems." As to the pain issue, Dr. Cole did not and could not assess Towell's pain, stating that Towell's "claimed pain problems" were a matter for "further medical evaluation." Tr. 340.

As to mental limitations, Dr. Cole stated that Towell "was able to sustain simple routine tasks, and no problems completing a simple multiple-step task were observed." Tr. 337. This is consistent with the definition of unskilled work, which involves "work which needs little to no judgment to do simple duties." 20 C.F.R. §§ 404.1568(a), 416.968(a). The ALJ's determination that Towell is limited to unskilled work is supported by substantial evidence.

Towell argues that the ALJ failed to give adequate weight to the March 2011 Global Assessment of Functioning ("GAF") rating of 50 from nurse practitioner Melanie Harris. The Commissioner does not accord GAF ratings significant evidentiary weight as a matter of policy. 65 Fed. Reg. 50746, 50764 (Aug. 21, 2000). This is true in part because the GAF scores consider factors not relevant to occupational functioning, such as the death of a family member, divorce, inadequate finances, and insufficient welfare support. *Diagnostic and Statistical Manual of Mental Disorders ("DSM")* 31-21 (4th ed. - TR 2000).

The ALJ noted Harris's report, and decided to give greater weight to Dr. Cole's opinion. Tr. 16. The ALJ stated that Harris was not an acceptable medical source and her opinion, unlike Dr. Cole's, was not based on objective testing. *Id.* The ALJ properly gave germane reasons to discount Harris's opinion.

7 - OPINION AND ORDER

## III. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

### A. Patricia Hane

Ms. Hane is Towell's mother. She completed an Adult Function Report in April 2010, in which she stated that her son:

> has no schedule...he spends lots of time fretting and talking to himself ...he has slowly gotten more obsessive compulsive...everything he does takes many times longer to do than the average person...he gets angry at everyone...feels everyone is against him...a load of laundry can take him hours to prepare...he has to "prep" his body before he bathes so sometimes it takes him hours to get ready to go somewhere...every single thing he does takes 10 times longer than it should...he needs to be encouraged to keep on task and not be so nitpicky but he just gets mad ...the more stressed he gets the longer it takes him to do things...he has problems getting along with people because he gets irrational, negative, paranoid and bitter...he has problems completing tasks and concentrating ...he can pay attention for a few minutes...he has problems with stress and will throw tantrums...he does not handle changes in routine well....

Tr. 240-46.

The ALJ noted the statements, and cited the contradictory medical reports that Towell shows no sign of motor weakness and that he retains the capacity to sustain simple tasks. Tr. 16. Towell argues that the ALJ confused the degree of difficulty of performing the task with the functional limitation of staying on task.    However, Dr. Cole stated that Towell "was able to sustain simple routine tasks, and no problems completing a simple multiple-step task were observed." Tr. 337.  Therefore, the ALJ properly gave Ms. Hane's statement partial weight.

### B. Jennifer Crafton

Ms. Crafton is Towell's sister.  She testified that Towell's OCD causes him to take significantly longer to complete tasks such as showering, laundry, or tooth brushing. Tr. 46-47. She testified that Towell did not finish tasks. Tr. 49.

The ALJ stated as to Ms. Crafton:

> She also observed that the claimant will throw tantrums, but that these outbursts are generally directed at himself and not at other people.  The undersigned give partial weight to Ms. Crafton's observations and accounts for the claimant's distractability and emotional outbursts by restricting him to tasks that involve no public contact and only occasional interaction with co-workers.

Tr. 16.

Again, the ALJ properly rejected lay testimony inconsistent with the medical evidence.

### C. Liza and Jeffrey Towell

Liza and Jeffrey are Towell's brother and sister in law.  They offered a written statement in which they described the claimant's behavior in detail and assert that he is difficult to work with.  Tr. 315-17.

The ALJ properly considered the lay testimony and rejected it for specific and germane reasons, specifically the conflicts between the clinical findings and the degree of mental and physical limitation described by his family.

## IV. Residual Functional Capacity Analysis

Towell contends that the ALJ erred by failing to include in the RFC functional limitations related to concentration, persistence, and pace. Essentially, Towell argues that Dr. Coles's statement that Towell "was able to sustain simple routine tasks" does not address his ability to perform tasks on a sustained basis.

The ALJ reasonably determined that Dr. Cole's report shows, that in his judgment, Towell retained the ability to perform simple routine tasks required for unskilled work and also to sustain such tasks. The ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the above reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 29 day of October, 2012.


JAMES A. REDDEN
United States District Judge